ANNA ELIZA MASTERSON, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 93517. Promulgated July 23, 1940.

*C. H. Keffer, Esq., Harry C. Weeks, Esq.,* and *R. B. Cannon, Esq.,*
for the petitioner.

*James H. Yeatman, Esq., Ralph F. Staubly, Esq.,* and *Vernon F.
Weekley, Esq.,* for the respondent.

### OPINION.

TURNER: The commissioner determined a deficiency of $83,376.92
in petitioner's gift tax for the year 1935. The question presented is
to determine what property or property rights constituted the subject
matter of gifts made by petitioner to her six children by an instru-
ment of transfer executed by her on August 19, 1935.

The petitioner, born February 5, 1868, is a resident of Amarillo,
Texas, and is the widow of R. B. Masterson, who died on August 1,
1931. Besides his wife Masterson was survived by two children by
a prior marriage and four children by his marriage to the petitioner.
At the time of his death he and petitioner owned a substantial estate,
all of which was community property.

On December 6, 1928, the petitioner and her husband executed a
joint will and covenant, wherein they expressed the desire to dis-
pose of all their estate in the manner set forth therein, such dis-
position "to take effect at the time of the death of either of us, and
at the time of the death of the survivor of us." It was mutually
agreed that all of the property belonging to either of them was com-
munity property and that in the disposition thereof all of the chil-
dren above mentioned, being six in number, would be treated and
considered as of the full blood, share and share alike. Other pro-
visions of the will read as follows:

3. In consideration of said mutual agreements, and in consideration of the
further mutual agreement that the survivor of us shall in all things be and

remain bound by the provisions hereof, and upon our mutual solemn covenant and agreement with each other that neither of us shall hereafter execute any will, other than as mutually agreed, dealing with our said estate, we have entered into this mutual covenant and the execution of this joint will, expressly agreeing and covenanting with each other that the same shall not hereafter, unless by our mutual written consent, be in any manner changed, modified or revoked, and that all the terms, provisions and conditions hereof shall be from and after the execution hereof binding upon us and the survivor of us as the agreed means and method of making effective our desires and directions as to the disposition of our said community estate. And for such purposes, we each waive our respective community rights and interest in said estate, and here agree that the same shall remain intact, subject to the terms, conditions and provisions hereof.

## II.

It is our will and desire that the survivor of us, R. B. Masterson or Anna Eliza Masterson, as the case may be, shall, with the rights and authority below given, have all the estate of every description, real, personal or mixed, which either or both of us may own, to be used, occupied, enjoyed and expended by and during the life of such survivor, with the full management and control thereof, with the right to receive all rents and revenues, invest all moneys of the estate, pay all taxes and assessments, indebtedness and other proper and just claims and charges against said estate and joint property; but with the limitation, however, that neither of us as such survivor shall have the right or power to sell and dispose of any of said property of said estate except for the purpose (1) of paying proper and legal charges and claims against said estate, (2) provide for the maintenance and support of the survivor of us, and (3) such sale and disposition of all or any portion of said property may be made at any time during his or her life by the survivor for the purpose of distributing said estate share and share alike among the children named in Paragraph 2, Subdivision I, hereof, after discharging the special bequests herein made. The survivor, however, shall in any event have the full right, power and authority to make, execute and deliver oil and gas leases or renew or extend existing oil and gas leases on any portion of our estate, and said oil and gas leases and renewals thereof may be made for any period or term of years agreed upon, and such period shall be in no wise lessened or diminished by reason of the death of either of us, but the property herein devised and bequeathed by this will shall vest subject to all of the terms and provisions of said leases.

2. The survivor of us shall have the right, power and authority at any time when he or she may deem best to distribute one-half of our joint estate to the children hereinabove named in Paragraph 2, Subdivision I, of this will, share and share alike.

3. In the event of the remarriage of the survivor of us one-half of all of our estate shall immediately vest in our children, share and share alike, such children being named in Paragraph 2, Subdivision III of this will, and shall vest in accordance with the terms of said paragraph.

## III.

Upon the death of the survivor of us, or upon our simultaneous death, we mutually agree and here jointly direct that said joint estate shall be disposed of as follows:

1. (a) We desire and direct that all our just debts be first paid out of said estate. (b) We have heretofore made gifts in equal portions to all of our

children in about the sum of $40,000.00 each, except to our daughter Mary, and in order to make such gifts equal as nearly as it is possible so to do we devise and bequeath to our daughter Mary Masterson Fain the home place, including the real estate, improvements and all furniture and fixtures located in the residence located thereon, and being the property at 1620 Polk Street, Amarillo, Texas, said property to vest in our said daughter free and clear of all estate or inheritance taxes, such taxes to be paid by the estate. (c) We bequeath to Mrs. Flora Masterson, of Oklahoma City, Oklahoma, stepmother of R. B. Masterson, $1000.00 in cash, and to Mrs. Bettie McGregor, of Amarillo, Texas, sister of R. B. Masterson, $1000.00 in cash.

2. Thereupon and after the payment of said special bequest to our daughter Mary Masterson Fain and the special bequests to Mrs. Bettie McGregor and Mrs. Flora Masterson, we desire and direct that our executors hereinafter named shall as soon as possible consistent with the welfare of said estate divide, transfer, convey and deliver the residue of same, share and share alike, to our children, R. B. Masterson, Jr., T. B. Masterson, Sallie Lee Scott, Anna Belle Kritser, Fannie Fern Weymouth and Mary Masterson Fain. In the event, however, that any of said children should predecease the survivor of us, then and in such event the interest in our estate herein devised to such child shall vest in the issue of his or her body, share and share alike; but in the event any of said children die without living issue or descendants thereof, then and in such event such deceased child's husband or wife, as the case may be, shall inherit one-half of the interest herein devised to such child, and the remaining one-half interest shall pass to the remaining surviving children herein named in this paragraph or their living descendants, share and share alike; and in the event that any of said children predecease the survivor of us leaving neither surviving husband or wife or surviving children or descendants thereof, then and in such event the entire interest in our estate devised to such child shall pass to the remaining surviving children herein named in this paragraph, or their living descendants, share and share alike. Descendants of deceased children, however, shall take under this will per stirpes and not per capita.

3. In making final distribution of our estate our executors hereinafter named shall collect from the devisees and legatees herein named any sums of money owing by them, or either of them, to either of us, whether evidenced by note or open account, said debts being considered as a part of our estate, and said sums shall be collected prior to any distribution of said estate.

4. We and each of us ask our devisees and legatees to in all things aid our executors hereinafter named in carrying out our wishes as expressed in this will, and in order, if possible, to insure this it is our will and we do now here expressly provide and make it a condition precedent to the taking, vesting, receiving or enjoying of any property, benefit or thing whatsoever under and by virtue of this will that no such devisee or legatee shall in any manner contest the probate thereof or question or contest the same or any part or clause thereof in any judicial proceeding; and we further will and provide that should any such devisee or legatee so contest or question or in any manner aid in such contest or questioning he or she shall thereupon lose and forfeit all right to any benefit and all right or title to any property or thing herein directly or indirectly devised or bequeathed to him or her; and every such right, title, property or thing is now by us expressly given, devised and bequeathed to and shall thereupon vest in such of our devisees and legatees herein named as our children as do not so question or contest or give aid

in such questioning or contest of this will or the probate thereof or any clause or provision thereof in the same proportion as to value in which they otherwise take in value of our estate under this will, and in lieu of the property herein given to such contesting devisees or legatees we bequeath the sum of $1000.00 each, and no more.

5. We hereby constitute and appoint the survivor of us as independent executor of this our joint will, without bond, with the rights and powers enumerated under Subdivision II hereof; and upon the death of the survivor of us, or upon the failure or refusal of the survivor of us to qualify as executor, we hereby constitute and appoint H. E. Exum, T. B. Masterson and C. E. Weymouth as independent executors of this our joint will, without bond, giving and granting unto them full power and authority to do all things whatsoever that may be requisite and necessary to reduce said estate to possession, including the power to sell and/or all real and/or personal property and to convert the same into cash or securities approved by said executors, in order that said estate may be fully distributed as promptly as possible to the beneficiaries herein named; and in the event that either one of the said H. E. Exum, T. B. Masterson or C. E. Weymouth should fail or refuse or be incapacitated to qualify as executor, the remaining two executors shall select a third; * * *

The will was admitted to probate in the County Court of Potter County, Texas, on August 17, 1931, and letters testamentary were issued to petitioner on that date. Thereafter and until August 19, 1935, petitioner administered the entire estate.

On August 19, 1935, petitioner executed an instrument purporting to release and relinquish a certain interest in the estate to the six children named in the joint will. This instrument provided in part as follows:

WHEREAS, it is the desire of the undersigned, Anna Eliza Masterson, at this time to release and relinquish unto the said R. B. Masterson, Jr., T. B. Masterson, Sallie Lee Scott, Anna Belle Kritser, Fanny Fern Weymouth, and Mary Masterson Fain all of her right, title and interest in and to the limited life estate reserved unto herself in and to her undivided one-half interest in and to the whole community property of herself and deceased husband, R. B. Masterson, with the exceptions hereinafter stated, and desires also to relinquish and release unto said persons any right of control that she might have in and to the accretions to said undivided one-half interest since her husband's death, so that henceforth she will look only to the limited life estate granted her by said will in the portion of the joint estate formerly belonging to R. B. Masterson for her support and maintenance, and she will have no interest in any of said joint estate, or its accumulations, save the right to manage and control under the terms of said will the one-half of said joint estate formerly belonging to R. B. Masterson, and will look to the residue of said one-half for her future support and maintenance:

Now, THEREFORE, in consideration of One Dollar ($1.00) to me in hand paid, receipt of which is hereby acknowledged, and the further consideration of the natural love and affection that I bear for the grantees herein, I, ANNA ELIZA MASTERSON, a feme sole, of Potter County, Texas, do by these presents release and relinquish unto T. B. MASTERSON, of Knox County, Texas, Sallie Lee Scott, of Travis County, Texas, and R. B. Masterson, Jr., Anna Belle Kritser,

a widow, Fanny Fern Weymouth and Mary Masterson Fain, all of Potter County, Texas, all right, title and interest of any and every nature whatsoever which I have or claim (the same being the limited life estate above described) in and to the undivided one-half interest which represents my entire community interest in and to the community estate of myself and deceased husband, R. B. Masterson, except as to the reservation and exception hereinafter set out, including any right of control, or other rights, that I might have in and to the increased value of said community interest that has accrued since the death of my husband, R. B. Masterson; so that henceforth said grantees hereinabove named shall have, own and control said entire interest herein relinquished free and clear of the limited life estate heretofore owned and held by me, Anna Eliza Masterson.

It is specifically understood that this relinquishment shall be construed to cover and include my entire community interest in and to the entire community estate of myself and deceased husband, R. B. Masterson, including all property, real, personal and mixed, of any and every nature whatsoever, except as to the reservation and exception hereinafter set out, including the increase in value thereof, so that henceforth I shall have no claim of any nature whatsoever in and to said property. It being distinctly specified that this relinquishment relates to my community one-half in the joint estate formerly belonging to R. B. Masterson and myself, and not to the one-half formerly belonging to him.

The total income of the estate from the date of Masterson's death to August 19, 1935, amounted to $332,900.16. During the same period there were expenditures in the amount of $148,799.07, leaving net revenues in the amount of $184,101.09. Of the $148,799.07 so expended, $50,050.45 represented withdrawals by petitioner for her personal living expenses during this period.

Petitioner filed a gift tax return for 1935 reporting the gifts made in the instrument dated August 19, 1935, and placed a value on such gifts in the amount of $44,249.70. After claiming specific exemption in the amount of $50,000, she reported no tax liability. In the return she described the gifts as "Relinquishment of Limited Life Estate" in property listed in a schedule attached thereto, which schedule shows assets and liabilities having a total net value of $735,189.20. The property thus listed was supposed to represent an undivided one-half interest in the entire estate as of the date of the gifts. The "limited life estate" was supposed to consist of petitioner's claim against the estate for maintenance and support and the value thereof was determined on the basis of her requirements for living expenses as shown by records kept since her husband's death and an actuary factor based on her life expectancy.

In asserting the deficiency, the respondent determined that petitioner's gifts to the six children consisted of a full life interest in one-half of the original community estate; also a fee interest in one-half of all accretions during the period in question. In computing the deficiency, he determined that the total value of the gifts

amounted to $284,254.13. After deducting $30,000 to represent six $5,000 exemptions and a specific exemption of $50,000, he determined that the value of the net taxable gifts was $204,254.13 and that there was a gift tax liability in the amount of $13,710.50.

In the petition it is alleged that the respondent erred in holding and determining that petitioner made a taxable gift in 1935, and in support of this claim of error it is alleged, among other things, that under the terms of the joint will petitioner "except for the powers, rights and duties conferred thereby upon her as executrix and as trustee, * * * had no right, title, interest or estate in and to the property, which had comprised the community estate of herself and husband and the fruits and revenues thereof, save and except the right to appropriate such amount of the revenues or corpus from said property as might be necessary or proper for her maintenance and support." In the alternative, it is alleged that if it should be held that petitioner made a taxable gift, respondent's determination of the value of the gift was erroneous and excessive. In his answer the respondent denied that he erred as alleged in the petition and hearing was had on the issues so drawn.

Thereafter and prior to the expiration of the time allowed for the filing of his brief, the respondent filed a motion to reopen the case for further hearing, requesting that he be permitted to file an amended answer conforming with the facts and proof. At the hearing thereon, the motion was denied. Subsequently, however, and prior to a determination of the issues, the Board vacated the order denying respondent's motion, granted leave to the respondent to file an amended answer, and ordered that the proceeding be placed on the calendar for further hearing.

Pursuant to the leave given the respondent filed an amended answer and a rehearing was had. In the amended answer it was alleged that the petitioner, instead of owning a life interest in the community property of herself and husband, plus accretions thereto as of the date of the gifts, as originally determined by him, owned an undivided one-half interest in fee in the community property; that by the instrument dated August 19, 1935, petitioner transferred, by gift, her aforesaid one-half fee interest in the community property, plus accretions thereto, to the six beneficiaries named; that the net value of the property so donated and transferred was $787,132.83; and, in the alternative, if he was mistaken in his belief that petitioner owned a one-half interest in fee in the community estate at the time the gifts were made, then she was seized and possessed of a full life interest in the community property of herself and husband, together with accretions thereto. Claim was made for an increased deficiency, the total amount claimed being $83,376.92.

It is the position of the petitioner that upon the death of her husband and her acceptance of the benefits under the will, she was divested of all rights in and to her one-half interest in the community estate except those provided for her in the joint will and covenant, and that under the said instrument she had no right in and to the community estate except the right to support and maintenance, which right she describes as a limited life estate. From this it is claimed that the relinquishment of such a limited life estate in one-half of the community estate to the remaindermen did not constitute the making of a taxable gift. It is the position of the respondent that the joint will and covenant was testamentary only and could not become effective as to petitioner's share of the community estate until her death and, since the gifts made in the year before us specifically covered her one-half share of the community estate, they were gifts in fee. In the alternative, he contends that the position taken in his deficiency notice is correct, namely, that from and after the death of her husband petitioner was the owner of a full life estate in the entire community estate and her gifts were composed of one-half of the said life estate plus one-half of the accretions thereto.

The question then is to determine the legal effect of the joint will and covenant and whether it became operative as to petitioner's one-half interest in the community estate. The instrument could have been revoked by mutual consent during the joint lives of the makers, but, after the death of Masterson and the acceptance by petitioner of the benefits conferred thereunder, she could not thereafter repudiate the covenant to the detriment of the other beneficiaries. *Larrabee v. Porter* (Texas), 166 S. W. 395. In *Rossetti v. Benevides* (Texas, 1917), 195 S. W. 208, the Court of Civil Appeals of Texas, considering a mutual will of a husband and wife, by the terms of which the survivor was to retain a life estate in the homestead and upon the death of the survivor the homestead was to go to two named beneficiaries in fee, held, citing *Larrabee v. Porter, supra,* that upon the death of the husband and the acceptance of the benefits under the will by the surviving widow each of the named beneficiaries was thereupon vested with a remainder interest in an undivided one-half of the homestead. It thus appears that even though an instrument is designated a mutual or joint will it may as to the survivor, by reason of provisions contained therein, be more than a will which would not be operative until his or her death, but may effect the transfer or conveyance of property of such survivor at the same time it becomes effective as the will of the first spouse to die. As to the intention of the parties in the instant case we have no doubt. The instrument of December 6, 1928, plainly shows that it was the intention of petitioner and her husband that their entire interests in the community estate should

pass to the six children and that from and after the death of the first spouse to die the interest of the survivor in the community estate should be limited to that of a life tenant. Under the doctrine of *Rossetti* v. *Benevides, supra,* the remainder interests of both Masterson and petitioner passed to the six children and became vested in them in fee in 1931, when Masterson died and petitioner accepted benefits under his will, and after that date the petitioner had no interest in the community estate other than a full life interest plus the added right to invade corpus if necessary for maintenance and support. In other words, upon Masterson's death in 1931 the said instrument as his will operated to pass a life interest in his undivided one-half interest in the community estate to petitioner, with remainders in fee to the six children, while as to petitioner it operated as a transfer or conveyance to the said children of remainders in fee in her undivided one-half interest in the said estate. The result was exactly the same as if the instrument had been as to petitioner a separate deed of conveyance to become effective on the death of her husband. That it may still operate as her will and control the disposition of other property at her death can in no way affect the fee remainders of the six children in her undivided one-half of the community estate, which remainders passed to and vested in the children in 1931. *Rossetti* v. *Benevides, supra.*

According to the terms of the instrument the survivor was to have and retain full use and enjoyment of the community estate for life, and this use and enjoyment specifically included the right to receive all rents and revenues therefrom. The record indicates that during the period from the date of Masterson's death to August 19, 1935, the date of the gifts herein, the total revenues of the estate amounted to $332,900.16 and that expenses, including petitioner's withdrawals for her personal use during that period, amounted to $148,799.07, leaving net revenues in the amount of $184,101.09. So far as the record shows, the net revenues remained in the estate and no part thereof was withdrawn by the petitioner for her personal use or enjoyment. To the extent of such net revenues, the interest of the petitioner in the estate as it existed at the date of the gifts was that of absolute owner and not that of a life tenant. At the rehearing counsel for the parties agreed that $735,189.20 was the value of one-half of the property "in possession of the Masterson Estate" when the gifts were made. We accordingly conclude that the subject matter of the gifts made by the petitioner consisted of $92,050.55, being one-half of the net revenues not shown to have been withdrawn by her from the estate, and a full life interest in property having a value of $643,138.65, that value being the difference between the stipulated value of one-half of the value of the property then in the estate and $92,050.55, which was one-half of the net rev-

enues not previously withdrawn by petitioner. The value of the property with respect to which the life estate applies being known, we do not understand that there is any difference between the parties as to the method of arriving at the value of the life estate itself.

Under the joint will and covenant the survivor had the right to sell or dispose of any part of the property for purposes of maintenance, and support. In making his determination of the deficiency, the respondent attributed no value over and above the life estate to that right in the survivor. Neither was any claim of additional value made in connection with the alternative contention stated in the amended answer. We conclude therefore that the value of that right, on the facts as they existed, was considered to be inconsequential or negligible.

A considerable portion of petitioner's brief is devoted to the argument that it was an abuse of discretion on our part to permit the filing of the amended answer. Not only do we find no merit in this contention, but, inasmuch as the case is disposed of on an issue raised in the original pleadings and preserved in the alternative by the amended answer, further or detailed consideration of the contention is unnecessary.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Mellott, dissenting: The conclusion reached by the majority seems to me to be erroneous. In the estate tax return filed by the petitioner, as executrix of her deceased husband's estate, there was returned for taxation one-half of the community property, the whole of which apparently had a value of approximately a million and a half dollars. The opinion states it is the position of the petitioner that upon the death of her husband and her acceptance of the benefits under the will "she was divested of all rights in and to her one-half interest in the community estate except" a right which she describes as "a limited life estate." This seems to be the holding of the majority, such conclusion being bottomed upon *Rossetti* v. *Benevides*, 195 S. W. 208, and *Larrabee* v. *Porter*, 166 S. W. 395, the former citing the latter as its principal authority.

Both of the cited cases were decided by Courts of Civil Appeals of the State of Texas and each involved a controversy between those, on the one hand, who would have been entitled to the property or property rights after the joint will had been probated following the death of the last survivor and those, on the other hand, who were claiming in violation of and contrary to the terms of the joint will. Thus in *Rossetti* v. *Benevides*, creditors of the wife, she being the last of the makers of a joint will to die, were relying upon a deed of

trust given by her which, if effective, would have operated to nullify the agreement which she had made with her husband through the execution of the joint will. In *Larrabee* v. *Porter*, the husband was the last to die. He had joined with his first wife in the execution of a joint will devising their property to their children. Subsequently he married and, contrary to the terms of the joint will, made a new will devising all of his property to his second wife. Following his death, his second will was probated over the objections of the children, they urging that the first, or joint will, should again be probated. The probate court having ruled against them, they took an appeal to the court of general jurisdiction and also instituted an action to try the title to the real estate involved, for rents and for certain personal property. The cases were consolidated for trial. The court sustained the children's contention that the first will should have been probated and entered judgment in their favor for the lands, rents, and personalty. The appellate court affirmed the judgment of the lower court.

I think the majority correctly interpret *Larrabee* v. *Porter* as holding that, after the death of one of the joint makers of a will and the acceptance by the other of the benefits conferred thereunder, the latter can not thereafter repudiate the covenant or compact to the detriment of the other beneficiaries. I do not agree, however, that under the facts of the instant case "the remainder interests of both Masterson and petitioner passed to the six children and became vested in them in fee in 1931." As I interpret the facts and the law of Texas with reference to joint wills, petitioner remained the owner of an undivided one-half interest in the community property after the death of her husband. When, therefore, she relinquished to the children "all right, title and interest of any and every nature whatsoever which I have or claim * * * in and to an undivided one-half interest which represents my entire community interest in and to the community estate of myself and deceased husband * * *", I am of the opinion that she conveyed to them her undivided one-half interest in fee in the community property and should be taxed accordingly. We may not rely upon *Rossetti* v. *Benevides* and *Larrabee* v. *Porter* as authority to the contrary. Neither hold that the mere probating of the will after the death of one of the joint makers passes the interest of both and the Supreme Court of Texas has specifically ruled otherwise. Thus in *Wyche* v. *Clapp*, 43 Texas, 543, it is said:

* * * from the very nature of such an instrument [a joint will] it cannot operate or have effect as the joint or mutual will of the parties while one of them survives; for during such time, if it is a will it is subject to revocation. It is, indeed, well established that agreements to make mutual wills are valid. But the effect of such agreements is not to render wills made in pursuance of them irrevocable, though they may be enforced in equity against

the estate of the defaulting party after his decease on the ground of an attaching equitable trust. * * * But when one of the parties to such an agreement is a married woman, it could have no binding force against her estate, it would seem, unless it was consummated in the manner prescribed by law for the execution of contracts by *femes covert*, or she had in some way bound or estopped herself from denying it after she became free from coverture. Be this, however, as it may, it has been held in no case which has come under our observation, and could not in sound principle be so held, as we think, that the mere execution of an instrument in the form of a joint will can be given by construction the effect of a contract or agreement to make mutual wills which will authorize a court of equity to fasten a trust upon the estate of the defaulting party, much less to warrant its dealing with the survivor as a debtor previous to his death for his half of a legacy so bequeathed.

An interesting discussion of the general subject of joint and mutual wills may be found in 69 C. J. 1295, *et seq*. It is there pointed out that a joint will is, in legal effect, the separate will of each of the persons executing it as makers. The text points out that it is sometimes said that a will executed in pursuance of an agreement for mutual wills is irrevocable, especially after the death of one of the parties to the agreement. It is stated, however, that "the true rule is that a mutual will, like every other will, is, as a testamentary instrument, in its essence and by its very nature, ambulatory and revocable throughout the lifetime of the testator, and that it can not be made irrevocable, even by the most express covenant or terms, although, as a compact, it may be irrevocable, or enforceable notwithstanding its revocation as a will. So, no estate vests under the will of the surviving party to an agreement for mutual wills, on the ground of its irrevocability after the death of the first maker; all that vests, if anything, on the death of the first of the testators is a right of action to enforce the contract against the survivor."

In the footnote it is pointed out that "it is the contract and not the will, that is irrevocable", the contract being irrevocable because a court of equity, under its fraud and trust jurisdiction will decree specific performance.

In an opinion by the Court of Civil Appeals of Texas much more recent than the cases relied upon by the majority, i. e., *Gorman* v. *Gause*, 56 S. W. (2d) 855, it is said:

The joint and mutual will of John P. Gause and wife cannot be given effect as the joint and mutual will of the parties while one of the parties survives as it is subject to be revoked by the survivor.

In support of the above holding, *Wyche* v. *Clapp*, *supra*, is cited. See also *Aniol* v. *Aniol*, 127 Texas, 276, and cases cited. Law of Marital Rights in Texas, Speer, 3d Ed., § 322.

Petitioner's designation in the instrument of gift or relinquishment to the children of the property conveyed as a "limited life estate" is, of course, not controlling. It is apparent from the instrument,

and especially from the last paragraph thereof, that petitioner was relinquishing to the children her "entire community interest in and to the entire community estate of" herself and deceased husband and her "community one-half in the joint estate formerly belonging to" her husband and herself. This was just as effective to vest in the children all of her undivided one-half interest in the community property as the probate of the will following her death would have been. By means of the instrument, property having a value of approximately three-fourths of a million dollars was transferred to the children. It will never be subjected to the estate tax. Shall it also be exempted from the gift tax? Cf. *Sanford's Estate* v. *Commissioner*, 308 U. S. 39. Being of the opinion that it should not be, I respectfully note my dissent.

SMITH and HARRON agree with this dissent.