**Corinne Darnell RICHARDSON et al., Appellants,**

v.

**D. C. LINGO et al., Appellees.**

**No. 12786.**

Court of Civil Appeals of Texas.

Galveston.

Jan. 20, 1955.

Rehearing Denied Feb. 10, 1955.

See also 273 S.W.2d 119.

Bracewell & Tunks and Joe H. Reynolds, Houston, for appellants.

Henderson & Kirchheimer and Theo. R. Kirchheimer, Houston, for appellees.

HAMBLEN, Chief Justice.

This appeal is from the order of the District Court of Harris County, sustaining appellees' plea in abatement and dismissing appellants' suit. The nature of appellants' suit in the trial court is disclosed by paragraph I of their petition, as follows:

"That the Plaintiffs, Corinne Darnell Richardson, Beryl Darnell James and Bess Darnell Jones, are the daughters of Rose Lingo, Deceased, who died on the 18th day of February, 1952, in Houston, Harris County, Texas, and who prior to and at

the time of her death was the wife of the Defendant, D. C. Lingo. That there were no children born to the marriage of Rose Lingo and D. C. Lingo. That on the 4th day of October, 1951, and prior to her death, Rose Lingo executed a Will, a copy of which is attached hereto and made a part hereof, naming her husband, D. C. Lingo, as principal beneficiary and naming the Plaintiffs, Corinne Darnell Richardson, Beryl Darnell James and Bess Darnell Jones, as contingent beneficiaries, and omitting as contingent beneficiaries her own son, Curtis Darnell and Ada Hatcher, the only child of the Defendant, D. C. Lingo. At the same time and on the same occasion the Defendant, D. C. Lingo, executed his Last Will and Testament, naming Rose Lingo as principal beneficiary and naming Corinne Darnell Richardson, Beryl Darnell James and Bess Darnell Jones, Plaintiffs herein, as contingent beneficiaries, omitting from his Will his own daughter, Ada Hatcher, and Curtis Darnell, the son of Rose Lingo, Deceased, as contingent beneficiaries. The Wills so executed were mutual and contractual Wills and executed in consideration of each other in that Rose Lingo, Deceased, agreed to leave from her Will her own son, Curtis Darnell, and the daughter of D. C. Lingo, Ada Hatcher, and that the Defendant, D. C. Lingo, agreed to omit from his Will, Curtis Darnell, the son of Rose Lingo, Deceased, and his own daughter, Ada Hatcher. Pursuant to this agreement and in consideration of these promises, the Wills were made and executed. Thereafter, Rose Lingo died on February 18, 1952, and prior to the filing of her Will for probate, D. C. Lingo, in complete disregard to the solemn agreement he made with his deceased wife, did breach the terms of the agreement by destroying his Will made pursuant to said agreement and executed a new Will wherein he named, in addition to Corinne Darnell Richardson, Beryl*e* Darnell James and Bess Darnell Jones, and contrary to the terms of the contract between himself and Rose Lingo, Deceased, his daughter, Ada Hatcher. That by reason of such acts The Defendant, D. C. Lingo, did breach the contract, all to the Plaintiffs' damage."

Attached to appellants' petition, as an exhibit thereto was a copy of the will of Rose Lingo, the material portions of which are as follows:

### "III.

"It is my Will and Desire that all of the rest, residue and remainder of my estate and property, both real and personal, I may die seized and possessed of, shall pass to and vest in fee simple in my beloved husband, David C. Lingo, and unto his heirs and assigns, in fee simple, absolutely and forever.

### "IV.

"But if my beloved husband shall not survive me, or if my husband shall die within thirty (30) days after the date of my death, I hereby give, devise and bequ*e*th all of my property of every kind and character, real, personal, and mixed, which I shall own at the time of my death, unto the following named persons, share and share alike, in fee simple, viz:

"Corinne Darnell Richardson, of Houston, Texas;

"Bessie Darnell Jones, of Houston, Texas;

"Beryl Darnell James, of Houston, Texas. * * *."

In addition to the allegations in paragraph I of their petition, which have been copied above, appellants alleged certain conveyances by appellee Lingo of properties owned by him and his deceased wife, Rose Lingo, as part of their community estate, there being no debts necessitating such conveyances, and which, it is alleged, were acts inconsistent with the contractual obligations undertaken by appellee, and which entitled appellants to rescind the contract, and estopped appellee from claiming under the will of Rose Lingo. The grantees from appellee were made party defendants, and appellants asked that such conveyance to them be set aside.

Appellee filed special exceptions to this petition, among which were numbers XI and XII, as follows:

## "XI.

"Defendant specially excepts to Plaintiffs' Petition in its entirety for the reason that same is insufficient in law in that it fails to state a cause of action against this Defendant or any of the other Defendants, and same should be stricken and Defendants go hence with their costs. Of which Special Exception Defendant prays judgment of the Court.

## "XII.

"Defendant specially excepts to Plaintiffs' Petition in its entirety for the reason that said Petition shows that this suit was prematurely brought in that there cannot possibly be a breach of any contract as alleged by Plaintiffs prejudicial to Plaintiffs until the death of the said D. C. Lingo, and same should be dismissed. Of which Special Exception Defendant prays judgment of the Court."

■ The action of the trial court in sustaining these exceptions and in dismissing appellants' suit is the basis of appellants' one point of error. Basically the question presented is whether a suit for breach of a contract to make a will can be maintained before the death of the contracting party against whom the breach is asserted. We thing that it cannot.

■ The contract is one to make a will. Wills have been frequently defined. One definition which is often quoted in Texas is stated in Williams v. Noland, 10 Tex.Civ.App. 629, 32 S.W. 328, 329, writ refused, as follows: " 'An instrument by which a person makes a disposition of his property, to take effect after his decease, and which, in its own nature, is ambulatory and revocable during his lifetime.' " Many other authoritative definitions might be cited, but we think it sufficient to state that in all of them, revocability is stated to be an essential characteristic of a will. So universally is the requirement noted, that the conclusion could be reached that any undertaking, even though it purports to be a will, which for any reason is not revocable, is not a will, but is a present conveyance of a future interest. Whether this necessarily follows or not, it appears to be clearly established that a will can speak and be effective only from and after the death of a testator. This being so, it must necessarily follow that appellee has the ever present power and right to perform the contract which it is alleged he made, at any time before his death, regardless of how many different wills he might execute or revoke in the meantime. His failure to perform his contract could not be ascertained until his death, and he could not be charged with breach of contract during his life. That the conclusions which we reach are correct, seems to be clearly indicated by the following expression of the Supreme Court of Texas in Wyche v. Clapp, 43 Tex. 543: "But from the very nature of such an instrument it cannot operate or have effect as the joint or mutual will of the parties while one of them survives; for during such sime, if it is a will, it is subject to revocation. It is, indeed, well established that agreements to make mutual wills are valid. But the effect of such agreements is not to render wills made in pursuance of them irrevocable, though they may be enforced in equity against the estate of the defaulting party after his decease. * * *" This expression has been frequently cited in Texas, and we find no authoritative statement to the contrary.

Appellants cite French v. French, Tex. Civ.App., 148 S.W.2d 930, and Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, as authority for the proposition that an oral contract to make mutual wills can be shown and enforced after one party's death and probate of his will. In both of those cases, the contract alleged, and the wills involved, devised to the respective spouses a life estate only, with remainder to the parties seeking to enforce the contract. The plaintiff's cause of action, therefore, arose by virtue of a remainder interest, which vested immediately upon the election by the surviving spouse to take under the will. Furthermore, despite the statement upon which appellants rely, the case of Wagnon v. Wagnon was not instituted until after the death of both spouses. In French v.

886

French, the suit had been originally instituted by the surviving spouse, but had been voluntarily dismissed by her and she was dead at the time of trial. The judgment of the trial court enforcing the alleged contract was reversed and remanded by the Court of Civil Appeals upon the proposition that the legal representatives of the deceased wife were necessary parties to an action to enforce the alleged contract. The precise question here involved was not before the court. In addition, the Court of Civil Appeals says this in its opinion [148 S.W.2d 937]: "Too much has probably been said in the discussion of this case on its merits. What has been said as to the merits is not binding on the subsequent trial. It was merely offered by way of suggestion." We do not consider either case as authority for the proposition that suit may be maintained against a surviving living spouse upon alleged breach of contract to make mutual wills.

We see no merit in appellants' contention that appellee's action in conveying portions of the community estate was inconsistent with the contractual obligations which he had undertaken, and estopped him from claiming under the will of Rose Lingo. Rose Lingo provided by her will that all of the estate of which she should die seized and possessed should vest in her husband, D. C. Lingo, his heirs and assigns, in fee simple, absolutely and forever. The estate in fee simple is one subject to no limitation other than the death of the owner intestate and without heirs, and by its very nature is freely and completely alienable. It has been held that in a grant of a fee simple, a following proviso that the grantee shall not convey without the consent of the grantor is void as a restriction on alienation, and therefore repugnant to the grant. However, in this case, appellants do not allege a contract not to alienate. They allege only an agreement to make a will identical to that of the deceased Rose Lingo, which, it will be noted, purports only to devise that estate of which she should die seized and possessed. In fact, in oral argument, we understood appellants to concede that appellee had the right of

inter vivos alienation. In any event we think the conclusion inescapable that he had such right, and that his actions were completely consistent with the will under which he deraigned title, and the contract which it is alleged that he made.

The conclusions stated require an affirmance of the judgment of the trial court.

Affirmed.

CODY, J., not sitting.