SALLIE B. HAMBLETON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7260–71. Filed July 16, 1973.

*L. E. Elliott,* for the petitioner.
*Bernard B. Nelson,* for the respondent.

#### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency for 1967 in the gift tax of petitioner Sallie B. Hambleton, in the amount of $150,880.61. The issue is whether petitioner, the surviving testator in a jointly executed will, made a gift at the time of her husband's death of a remainder interest in her one-half share of the community property.

The case was submitted pursuant to Rule 30 of the Rules of Practice of this Court, and all the facts are stipulated.

Petitioner's legal residence at the time the petition herein was filed was Dallas, Tex. She filed a gift tax return for 1967 with the district director of internal revenue in that city.

On February 18, 1960, petitioner and her husband, Clarence O. Hambleton (hereinafter Hambleton), who had been married since October 10, 1910, jointly executed a will, which was in effect at the date of his death on June 4, 1967. The will was admitted to probate as

---

his last will and testament. Virtually the entire estate of petitioner and Hambleton at his death consisted of community property under the laws of Texas.

The will contains a "General Statement" which recites that it was included for a "better understanding" of the testators' "purpose and intent." It briefly describes their family and their estates and states that it is considered that the income from the combined community estates "will be adequate for the support and maintenance of the survivor of us for and during his or her lifetime; and * * * if kept intact and managed judiciously can be passed at our respective deaths in accordance with this our mutual wills" to their children or their descendants. For these reasons, petitioner and Hambleton agreed that—

the first to die will bequeath his or her interest in our community estate to a trustee for the use of the survivor for life and upon the death of the survivor, for the use of our children and their descendants, as in our mutual wills hereinafter specifically provided; and, in consideration therefor, the survivor has agreed, and hereby does agree to bequeath all of the survivor's portion of the community estate to the same trustee and for the same uses and purposes; and, further:

In order to insure the judicious management and the preservation of the survivor's portion of the community estate for the purposes herein set forth, the survivor has agreed and does hereby agree to transfer and assign, and does, as of the date of the death of the first to die, hereby transfer and assign to First National Bank in Dallas [as trustee] all the survivor's portion of our community estate, * * * [with the exception of certain "Special Bequests" set out in section one of the will], in trust, however, to pay to the survivor the income and such of the principal as may be necessary (in connection with other income the survivor may have), to maintain and support the survivor in the manner in which accustomed during the lives of both of us, and to pay all expenses of illness or accident.

As respects the management of survivor's portion of the estate, the trustee shall have all the powers hereinafter given the trustee by the terms of the survivor's will.

In addition to the payment to the survivor as above provided, the trustee shall from time to time distribute to the survivor such amounts of principal as may be requested by an instrument of writing signed by the survivor, both our children and P. Russell Hambleton, or the survivor of our children and P. Russell Hambleton.

The survivor's portion of the community estate existing at the death of the survivor shall pass by the will of the survivor as hereinafter set forth, and not otherwise.

Following the "General Statement," the will recites that Hambleton and petitioner "do make, publish and declare this our mutual" wills, "intending hereby to make our said wills contractual and effective as of the date of our respective deaths."

Section one of the will lists certain "Special Bequests" given by the first to die to the survivor for life, with provisions that such items

**560**

or interests in property which the survivor possesses at death are to be given to the lineal descendants or in trust for their benefit. Insofar as here pertinent, the properties so bequeathed include clothing, jewelry, household furniture and fixtures, personal automobiles, and the home in which petitioner and Hambleton were living.

Section two of the will, entitled "Disposition of Residuary Estate," provides in part that after the payment of all debts, funeral expenses, administration costs, and State inheritance and Federal estate taxes, "all the rest and residue" of the estate shall pass as directed. One paragraph provides for the transmission of the residuary estate of the "first of us to die" to the First National Bank in Dallas in trust. A second paragraph similarly disposes of the residuary estate of the survivor "as of the time of his or her death." Both transfers in trust are made "for the uses and purposes * * * set forth in this our mutual wills."

Sections three and four of the will provide for the division of each spouse's estate into separate testamentary trusts with comprehensive terms providing for the payment of income during the lifetimes of the survivor, the primary beneficiaries (petitioner's and Hambleton's two children), and the secondary beneficiaries (descendants of the primary beneficiaries).[1] Section four of the will specifically provides that the trustee shall pay to the survivor—

such of the income of the Trust Estate of the first to die as in the opinion of the Trustee is necessary, in connection with any other income the survivor may have, to support and maintain the survivor in the manner and with the degree of comfort and convenience to which we were accustomed during the lifetime of both of us, and to pay all expenses of illness or accident. * * * [2]

The rest of the will contains sections defining the trustee's powers and the trust terms, appointing the First National Bank in Dallas as executor of the will of each of the testators, and providing for the payment of "All debts and taxes of every nature, * * * ratably from all the assets of the estate before distribution."

On June 4, 1967, the date of Hambleton's death, the value of petitioner's one-half of the community property was $708,709.90, and the value of the remainder interest allegedly transferred by petitioner, computed under the applicable Treasury regulations, was $469,887.67.

At her husband's death, petitioner transferred her one-half of the

---

[1] Both the primary and secondary beneficiaries are hereinafter referred to as the beneficiaries.

[2] It will be noted that this provision calling for the trustee to pay the survivor such income "as in the opinion of the Trustee" is necessary, in connection with other available income, to support and maintain her (or him) is not entirely consistent with the agreement in the General Statement indicating that the first to die will bequeath his or her interest to a trustee for the use of the survivor.

community property into the trust described in the "General Statement" (sometimes referred to herein as the General Statement trust) of the will. Between February 9, 1968, and October 29, 1970, she requested the trustee to disburse specified sums to her and to release certain stock from the principal of the inter vivos trust. Each of these requests described the trust as one which petitioner, as survivor, created "for her own benefit," and bore the concurrence of petitioner's two children and P. Russell Hambleton.

The notice of deficiency issued to petitioner stated that: "It is determined that as of the date of your husband's death, June 4, 1967, you gave a $568,995.68 remainder interest in community property to a trust for the benefit of your children." [3]

In support of this determination, respondent maintains that at the time of the transfer to the General Statement trust, petitioner relinquished all dominion and control over the remainder interest, reserving only an income interest for her lifetime, coupled with a power of invasion which was limited by a fixed and ascertainable standard.

Petitioner counterargues that, at the death of Hambleton, she did not transfer any beneficial interest in her share of the community property to anyone and that, pursuant to the will, her community share of the property will be transmitted to the testamentary trust only at her death and, then, pursuant to the will and not otherwise. She maintains that the transfer to the General Statement trust was not a taxable gift but was only a transfer of bare legal title which did not result in the relinquishment of her rights to the subject property. Therefore, she contends, she did not make a taxable gift at her husband's death.

We hold for petitioner.

Section 2501 [4] imposes a tax on "the transfer of property by gift," and section 2511, in pertinent part, states that "section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible." As used in section 2511, "The terms 'property,' 'transfer,' 'gift,' and * * * ['indirect'] are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable

---

[3] The difference between the figure ($568,995.68) stated in the notice of deficiency and the figure ($469,887.67) set forth above, as the value of the remainder interest, is that the latter figure is adjusted for gift taxes.

[4] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue.
SEC. 2501. IMPOSITION OF TAX.

(a) TAXABLE TRANSFERS.—
(1) GENERAL RULE.—For the calendar year 1955 and each calendar year thereafter a tax, computed as provided in section 2502, is hereby imposed on the transfer of property by gift during such calendar year by any individual, resident or nonresident.

value." S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 524; H. Rept. No. 708, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 476.

In applying the gift tax, we must heed the teaching that—

"taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed" * * * [and that] a retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished * * *

*Estate of Sanford* v. *Commissioner*, 308 U.S. 39, 43 (1939). Such control may take the form of a power to revoke the trust and regain the property, *Burnet* v. *Guggenheim*, 288 U.S. 280 (1933), or a power to modify the terms of the arrangement so as to make some other disposition of the property, *Estate of Sanford* v. *Commissioner*, *supra* at 43–44. Similarly, a purported transfer of a remainder interest is not a completed gift if it is subject to a reversionary interest, cf. *Newman* v. *Commissioner*, 222 F.2d 131, 135–136 (C.A. 9, 1955), affirming 19 T.C. 708 (1953) ; *Hughes* v. *Commissioner*, 104 F.2d 144, 147 (C.A. 9, 1939), affirming a Memorandum Opinion of this Court. The statute is not aimed at every transfer without adequate consideration. It is aimed only at transfers "that have the quality of a gift, and a gift is not consummate until put beyond recall." *Burnet* v. *Guggenheim*, *supra* at 286.

In evaluating the extent to which petitioner abandoned control over her share of the community property at Hambleton's death, we turn to Texas law. Under that law, each spouse owns an undivided one-half interest in the community property and has the power of testamentary disposition over his or her share. Each spouse may exercise that power in a separate will or, as in the instant case, a jointly executed will. See generally *Commissioner* v. *Chase Manhattan Bank*, 259 F.2d 231, 238–239 (C.A. 5, 1958), reversing in part and affirming in part 25 T.C. 617 (1955), certiorari denied 359 U.S. 913 (1959).

We think it apparent that petitioner's transfer of her share of the community property to the General Statement trust, subject to the retained reversionary interest, was not a gift of a remainder interest to anyone. Under the terms of that trust, petitioner conveyed the property to a trustee "In order to insure the judicious management and the preservation" of her share of the community estate. She is to receive the income for life and—under stated conditions—distributions of the principal, and no one else is designated as a beneficiary of the trust. At her death the trust will terminate, and the property remaining will revert to her (or her personal representative) for transmission pursuant to her will. Quite clearly, in view of the reversion, this was not

a taxable transfer. *Newman* v. *Commissioner*, *supra* at 135–136; *Hughes* v. *Commissioner*, *supra* at 147.

As to the portion of the instrument containing the joint will, the answer is the same. Texas law recognizes that a joint and mutual will has two distinct though closely related elements: (1) The testamentary provisions applicable to the respective estates, and (2) the underlying contract obligating the survivor to allow his or her property at death to pass pursuant to the testamentary provisions.

Since a will speaks only as of the testator's death, the testamentary portion of the instrument, at Hambleton's death, did not transmit any interest in petitioner's share of the community property to anyone. Whatever portion of that property remains at her death, as noted above, will pass under the joint will when probated as her testament.

Nor did the underlying contract cause a transfer of a remainder interest in petitioner's property at Hambleton's death. While the contract does not prevent her from revoking the will and executing another one which would be subject to probate, *Tips* v. *Yancey*, 431 S.W.2d 763, 765 (Tex. 1968), it prevents an "effective" revocation of the will, *Weidner* v. *Crowther*, 157 Tex. 240, 301 S.W.2d 621, 624 (1957). This means that the designated beneficiaries may take steps to enforce their rights under the contract after she dies.[5] But the contract as well as the will remains executory as to her property until she dies. *Richardson* v. *Lingo*, 274 S.W.2d 883, 885 (Tex. Civ. App. 1955).

The guiding legal principles were recently explained by the Supreme Court of Texas in *Magids* v. *American Title Insurance Co., Miami, Fla.*, 473 S.W. 2d 460, 462 (Tex. 1971). In that case, Fannie and Charles Magids, wife and husband, executed reciprocal wills devising a life estate interest in all property "of which I die possessed," with remainder to their three children. Fannie Magids died, and during Charles' lifetime a mortgagee sought to foreclose a lien on what was claimed to be a remainder interest of one of their sons in his father's one-half of the property as well as the remainder interest devised to the son by his deceased mother. There was a question whether the surviving testator had agreed not to revoke the will. Holding that the son did not own a remainder interest in his father's share of the

---

[5] The enforcement remedies are (1) a suit for damages for breach of the contract at the survivor's death, *Henderson* v. *Davis*, 191 S.W. 358, 361 (Tex. Civ. App. 1917); (2) action for declaratory judgment for construction of the contract, *Dougherty* v. *Humphrey*, 424 S.W. 2d 617 (Tex. 1968); and (3) action for the declaration of a constructive trust, *Oate* v. *Oate*, 235 S.W. 2d 456, 458 (Tex. Civ. App. 1950); Note, "Enforcement of Contracts to Make Wills," 21 Baylor L. Rev. 411 (1969). None of these remedies embraces the theory that the survivor, during his or her lifetime, has parted with control or ownership of his property. See and compare *Scales* v. *Scales*, 297 F. 2d 219 (C.A. 5, 1961), involving a "widow's election" will.

property, regardless of whether there was an agreement not to revoke the will, the court said (p. 466) :

Both joint and separate reciprocal wills containing similar terms have been held to have had no effect on the survivor's ½ of the community, leaving him free to sell or deal with it as he pleases. * * * The same has been held with respect to mutual wills and irrevocable contracts which had similar terms as to property affected and time of disposition. * * * Thus, even if Mr. Magids had contracted not to revoke his will, the result as to his own ½ of the property would be the same, because under the terms of the wills neither spouse was undertaking, attempting, or professing to dispose of the other's property ; Mr. Magids' will would have been effective only upon his death, and then only as to that property of which he died possessed. * * *

Similarly, in *McFarland* v. *Campbell*, 213 F. 2d 855, 859 (C.A. 5, 1954), the taxpayer claimed an estate tax charitable deduction for the value of what was alleged to be the survivor's remainder interest in community property covered by a joint and mutual will. The deduction was claimed on the theory that the remainder interest passed at the death of the testator first to die. Denying the claimed deduction, the court summarized the legal principles as follows :

under Texas law, a joint will though valid does not take effect as such while one of the parties is alive. Therefore, the survivor of a joint will is not divested of any portion of his or her estate merely because the joint will becomes irrevocable, even by consent, after the death of the testator first to die. Even an irrevocable will does not become effective as a will until the death of the testator or testatrix. Notwithstanding any contractual obligations, being still alive, the * * * [survivor] has not been divested of any of her property by the joint will, by her separate will, or by estoppel with reference to anything in her husband's separate will. The contract contained in the joint will has been sealed by death and fully executed on the part of the decedent; but, as to the widow, it is merely an executory contract in its most essential provisions, and will remain so until her life's end. She has made her will and has agreed not to alter or revoke it, but she has not thereby been divested of the title or deprived of the possession of any of her property. * * * [6]

Nothing in the joint and mutual will of petitioner and Hambleton renders these principles inapplicable. Their contractual agreement was that if the first to die would leave his or her share of the community property to the testamentary trust, subject to a discretionary life income interest in the survivor, the survivor would leave all the property he owned at death to the testamentary trust. The General Statement expressly provides that the "Survivor's portion of the community estate *existing at the death of the survivor* shall pass by the will of the survivor." (Emphasis supplied.) Consistent with this provision, separate paragraphs in the will dispose of the property of the first to die

---

6 Although the Court of Appeals here refers to the will as being irrevocable, the Texas courts usually say that "it is the contractual portion of the will and not the will itself which is irrevocable." *Kirk* v. *Beard*, 162 Tex. 144, 345 S.W.2d 267, 272 (1961) ; *Magids* v. *American Title Insurance Co., Miami, Fla.*, 473 S.W.2d 460, 464 (Tex. 1971)

and the property owned by the survivor at his or her death. Neither the contract nor the will purports to pass petitioner's property until she dies and, then, only her estate as it exists at her death.

Since neither the joint will nor the underlying contract at Hambleton's death transmitted a remainder interest in petitioner's property, we think it clear that no gift tax was incurred. In *S. E. Brown*, 52 T. C. 50 (1969),[7] this Court, holding that the surviving testator in that case did not make a gift of a remainder interest in the community property which he owned at his wife's death, said (p. 66) :

The only thing that can conceivably be considered as having passed at that time under the theory of mutual wills was the right to receive the property which * * * [the survivor] owned at death. There is a substantial difference between the present transfer of a remainder interest in property owned by * * * [the survivor] at * * * [his wife's] death and the present transfer of a right to receive whatever property * * * [the survivor] owns at his death. A joint and mutual will at the time of the death of the first testator passes no present interest in the property of the survivor. Its effect is contractual not dispositive.

A contractual promise to transfer an indefinite amount of property at one's death is not a present gift. Cf. *John D. Archbold*, 42 B.T.A. 453, 455 (1940).

Nor can it be said that the contract underlying the mutual will coupled with the General Statement trust caused petitioner to relinquish her right to the economic benefits of a remainder interest in her share of the community property. Not only will the entire remaining corpus of the trust revert at her death; she also retains economic benefits in the property during her lifetime. Even though the property is in the hands of a trustee, she can enjoy its economic benefits by borrowing money or otherwise creating debts payable out of the property or its proceeds either during her lifetime or at her death.

It appears that petitioner's creditors could reach both the corpus of and the income from the General Statement trust during her lifetime. She is the grantor and, as we have pointed out, the only beneficiary of that trust, and she holds the right to a reversion of the corpus remaining at her death. Texas law does not countenance arrangements whereby one, retaining such interests in his own property, seeks to place it beyond the reach of his creditors. *Glass* v. *Carpenter*, 330 S.W.2d 530, 533 (Tex. Civ. App. 1959).

---

[7] In *S. E. Brown*, 52 T.C. 50 (1969), this Court, in reaching the above-stated conclusion, resolved a contested issue as to whether the will was a mutual one, holding that the instrument in question was a joint and reciprocal but not a mutual will, i.e., it was not contractual in nature or made in pursuance of a contract. As a further ground for its decision, the Court held that, even if the joint will were mutual, the taxpayer still made no transfer of property, property rights, or interest by gift, under secs. 2501(a) and 2511(a), at the time of his wife's death.

Moreover, the will expressly provides that petitioner's creditors are to be paid before anything passes under her will. Consistent with Texas practice, *Scofield* v. *Bethea*, 170 F.2d 934, 935 (C.A. 5, 1948); *Nye* v. *Bradford*, 144 Tex. 618, 193 S.W.2d 165, 169 (1946), the will contemplates that it is to be probated as petitioner's will at her death in the same manner as it was probated as Hambleton's will at his death. By its terms the will passes only what remains at petitioner's death "after the payment of all debts, funeral and administration expenses and State inheritance and Federal estate taxes due in consequence of our respective deaths."

Thus, petitioner has retained power to deplete her estate through the creation of debts as she sees fit. She may create debts for her own use or for the acquisition of property which she may give to others. This retained power has the same effect as a power to revoke the trust and regain the property, *Burnet* v. *Guggenheim*, 288 U.S. 280 (1933), or a power to modify the entire arrangement, *Estate of Sanford* v. *Commissioner*, 308 U.S. 39 (1939).

The situation is analogous to *Alice Spaulding Paolozzi*, 23 T.C. 182 (1954). There the taxpayer transferred property to a trust, empowering the trustees to pay her as sole beneficiary so much of the net income as they in their absolute discretion should deem to be to her best interests and to pay the remainder to her issue or other designated persons. Respondent contended that the taxpayer had made a completed gift as to the entire corpus on the theory that the retained income interest was not susceptible of actuarial valuation. However, this Court held that under Massachusetts law, by which the trust was governed, the taxpayer's creditors could reach the maximum amount distributable to her. Since the taxpayer in that case, by creating debts, could consume the property claimed by respondent to have been the subject of the transfer, this Court found that no taxable gift had been made. See also *Sarah Gilkey Vander Weele*, 27 T.C. 340, 343–344 (1956), affd. 254 F.2d 895 (C.A. 6, 1958).

The Hambleton will is different from the type of joint will in which at the death of the first testator to die, the *entire* community estate passes to the survivor (or a trust for his or her benefit) for life and upon the survivor's death to designated beneficiaries. See, e.g., *Larrabee* v. *Porter*, 166 S.W. 395 (Tex. Civ. App. 1914). Technically, under that type of will, the property passes at the death of the testator first to die pursuant to the contract between the parties rather than under the will, *Calvert* v. *Fort Worth National Bank*, 163 Tex. 405, 356 S.W. 2d 918 (1962). However, as a result of the survivor's election,[8] acqui-

---

[8] The widow may be put to an election at her husband's death by a will executed only by him, and by electing to take the benefits conferred by his will she may relinquish her own share of the community estate. See, e.g., *Vardell's Estate* v. *Commissioner*, 307 F.2d 688, 692 (C.A. 5, 1962); *Mildred Irene Siegel*, 26 T.C. 743, 747 (1956), affd. 250 F.2d 339 (C.A. 9, 1957). Where the widow remains in possession of the entire community

escence, or contractual promise, the survivor is held to have irrevocably parted with a remainder interest in his or her share of the community estate at the death of the testator first to die, retaining only a life estate therein. *Murphy* v. *Slaton*, 154 Tex. 35, 273 S.W. 2d 588, 595 (1954); *Dougherty* v. *Humphrey*, 424 S.W.2d 617, 620–621 (Tex. 1968).

Under this type of will, often referred to as the widow's election will, it appears to be settled that the surviving spouse makes a taxable gift of the remainder interest at the death of the testator first to die, at least to the extent that the value of the remainder exceeds the value of the life estate obtained in the decedent's share of the community property. See, e.g., *Commissioner* v. *Masterson*, 127 F.2d 252 (C.A. 5, 1942), affirming 42 B.T.A. 419 (1940), rehearing denied 128 F.2d 526 (C.A. 5, 1942), (Texas); *Mildred Irene Siegel*, 26 T.C. 743, 747 (1956), affd. 250 F.2d 339 (C.A. 9, 1957), (California); *Zillah Mae Turman*, 35 T.C. 1123, 1129 (1961), (Texas); *Estate of Emma Bressani*, 45 T.C. 373, 379 (1966), (California). Cf. *Chase National Bank*, 25 T.C. 617, 627 (1955), (Texas).[9] The values of the retained life estate are determined by the applicable Treasury regulations, and the amount of the gift is computed accordingly. These cases do not apply here because Hambleton, at his death, did not even purport to pass petitioner's share of the community property.

The facts in the instant case are vastly different from those in *Estate of Ira C. Copley*, 15 T.C. 17 (1950), affd. 194 F.2d 364 (C.A. 7, 1952), on which respondent places his main reliance. In that case Copley, in an antenuptial agreement executed in contemplation of marriage, obligated himself in 1931 to pay to his prospective wife " 'to be effective immediately after the solemnization of said marriage, the sum of one million dollars, the said sum to become and to be her sole and separate property.' " His intended wife agreed to accept this sum in lieu of all claims of dower, inheritance, and descent or any other rights in his property which might otherwise accrue to her by reason of the marriage. She further agreed on request to execute

estate, both the life interest in her husband's share and her own share, there is a presumption that the will was not intended to pass her share until she dies. Cf. *Commissioner* v. *Chase Manhattan Bank*, 259 F.2d 231, 240 (C.A. 5, 1958), reversing on other grounds 25 T.C. 617 (1955), certiorari denied 359 U.S. 913 (1959); *Weidner* v. *Crowther*, 157 Tex. 240, 301 S.W. 2d 621, 627 (1957). This interpretative problem appears to explain, at least in part, the division of the Court of Appeals in *Commissioner* v. *Masterson*, 127 F.2d 252, 256 (C.A. 5, 1942), affirming 42 B.T.A. 419 (1940), rehearing denied 128 F.2d 526 (C.A. 5, 1942).

[9] In all these cases except *Commissioner* v. *Masterson, supra*, the will placed the community property in trust so that the surviving spouse had no power over the property and had only the income rights conferred upon her or him. In *Masterson*, the widow expressly elected to take a life estate in the entire community, waiving all other interests therein to her children. She was severely limited in her power to dispose of any of the property except for her maintenance and support. The majority opinion was the subject of a strong dissent and has been questioned in *Scofield* v. *Bethea*, 170 F.2d 934, 935 (C.A. 5, 1948), and *S. E. Brown*, 52 T.C. 50, 68 (1969).

appropriate instruments to permit him to convey good title to property owned or afterward acquired by him. Copley did not actually discharge his $1 million obligation to her until he made transfers of property in 1936 and 1944. Affirming the Tax Court's holding that Copley did not make gifts in 1936 and 1944, when he discharged the obligation assumed in 1931, the Court of Appeals explained the underlying rationale as follows (p. 365):

> Under the law of Copley's residence and domicile (Illinois), there is no question but that the agreement of the parties, upon their marriage, became a binding and legally enforceable obligation. * * * Copley's obligation to pay his wife one million dollars the next day after their marriage was a debt and possessed all the indicia of a promissory note payable on demand. She could have assigned and conveyed good title to the instrument which evidenced his obligation to pay, and either Mrs. Copley or her assignee could have maintained an action against Copley and recovered a judgment. And it can hardly be questioned but that Copley by the obligation thus assumed depleted the net worth of his estate and that the net worth of his wife's estate was augmented, each to the extent of one million dollars.

Contrasting the present case, petitioner did not obligate herself to pay any specific sum to anyone; she merely agreed to transmit whatever property remains at her death. Her obligation to allow her property to pass to the testamentary trust is not subject to immediate enforcement, as was true in *Copley*, but is "merely an executory contract * * * and will remain so until her life's end." *McFarland* v. *Campbell*, 213 F.2d at 859. Her obligation does not deplete her estate but, rather, her entire estate as it exists at her death, including the full value of the property going to the testamentary trust, will be includable in her gross estate for estate tax purposes. In *Copley*, had the wife died before her husband paid his debt to her, the value of his debt agreement would have been includable in her gross estate, but quite clearly, in the instant case, the estate of none of the Hambleton children or grandchildren, should they predecease petitioner, would be taxed on the amount which they expect to receive ultimately from petitioner.

We hold that petitioner, at Hambleton's death, did not part with either legal title to or the economic benefits of her share of the community property. She is not liable for the gift tax deficiency determined by respondent.

*Decision will be entered under Rule 50.*