[Civ. No. 11716. Second Appellate District, Division One.—May 9, 1939.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), as Executor, etc., Plaintiff and Appellant, v. MARY A. STACK, Defendant and Appellant.

Denio Hart, Taubman & Simpson for Plaintiff and Appellant.

Oscar J. Seiler and W. Ward Johnson for Defendant and Appellant.

DORAN, J.—Plaintiff, Security-First National Bank of Los Angeles, hereinafter referred to as the bank, as executor of the will of Bernard E. Stack, deceased, commenced this action to recover from Mary A. Stack, widow of deceased, certain securities which, prior to the death of decedent, had been kept in a safe deposit box to which both decedent and his wife had access. The widow of deceased, hereinafter referred to as defendant, asserted title to the securities in herself as a surviving joint tenant by virtue of the fact that the securities had been purchased with funds drawn from joint bank accounts of the husband and wife. The bank, on the other hand, contended that by the provisions of the husband's will, and a "waiver and election to take" under the will, executed by the wife, both of which instruments were executed on June 8, 1932, the husband and wife intended to and did thereby terminate their joint tenancy not only in all property then owned by them but in all property thereafter acquired.

The trial court having concluded, and accordingly adjudged, that plaintiff bank as executor was entitled to possession of the property acquired prior to the date of the execution of the will and waiver, but that the defendant widow was the owner and entitled to the possession of those securities purchased with funds from the joint bank accounts subsequent to that date, both parties have appealed from those portions of the judgment adverse to each respectively.

The will, which devised and bequeathed the entire estate of decedent to the bank in trust, provided for the income therefrom to be paid to the widow during her lifetime and upon her death the principal to be paid to a relative of decedent. The pertinent part thereof is as follows:

"I declare that all of the property in which at the date hereof I have any interest, or which at this date stands in my name or in the name of myself and my wife, is our community property, and it is my intention hereby to dispose not only of my separate estate and my share of the community property, but of the entire community estate, and for this purpose my wife has elected to take under the terms of my Last Will and Testament and has executed an election and a waiver of her community property rights, which said election and waiver is attached to this my Last Will and Testament."

The election and waiver referred to is as follows:

"I, Mary A. Stack, wife of Bernard E. Stack, do hereby certify that I have read the foregoing Will of my husband and fully understanding said will and that my husband thereby disposes not only of his separate property but also of our community property now owned or hereafter to be acquired, if any, including my half thereof, and being fully convinced of its reasonableness and the wisdom of its provisions, I hereby elect to accept and acquiesce in the provisions of said Will, waiving all claims to my share of any community property and any and all other claims that I may have upon any of the property disposed of by said Will, including all of his property exempt from execution and my right to a probate homestead, but not including however and expressly excepting therefrom my right to a family allowance out of his estate during the probate administration thereon. This election and waiver is not a grant or release of right, title, interest or estate in any of our community property now owned or hereafter to be acquired, and shall be effective and valid for any purpose only after the demise of my husband and upon the conditions precedent that said Will shall be duly admitted to probate by a court of competent jurisdiction and that it shall not be successfully contested or probate thereof revoked. . . . "

As above indicated in substance, the action arises from a dispute as to the interpretation and legal effect to be given to the quoted portions of the will and waiver, as well as to the legal effect to be given to the purchase by the testator, after the execution of the will, of property with moneys from a joint bank account of the husband and wife and before the husband's death; also, the legal effect to be given to the contract for the rental of the safe deposit box hereinbefore referred to.

It appears from the record, as summarized in defendant's brief, that Bernard E. Stack and Mary A. Stack were married in 1885 and lived together thereafter until November 25, 1936, when Bernard E. Stack died. Shortly after their marriage they took up a homestead in Montana where they lived until 1919, at which time they moved to Long Beach, California, bringing with them some property, the exact amount of which is not known. After coming to Long Beach, Mr. Stack became interested in the National Bank of Long

Beach, which later, by merger, became the Long Beach branch of the Security-First National Bank of Los Angeles, the executor and trustee named in decedent's last will. For many years prior to the death of Mr. Stack he had been a member of the advisory board of the Long Beach branch of the bank. Quoting from defendant's brief, "The evidence is uncontradicted that Mr. and Mrs. Stack were both hard workers and that the property belonging to them at the time of the death of Mr. Stack had been acquired through their joint efforts during the fifty-one years of happy married life that they lived and worked together, Mrs. Stack attending to the housework and Mr. Stack looking after the business affairs." They appeared to have had full and complete confidence in each other. Their bank account appears always to have been carried as a joint tenancy with right of survivorship.

Two days before the execution of the will and waiver, the joint tenancy ownership in certain real estate was terminated by deed of the parties.

The property contained in the safe deposit box, at the time of the death of Mr. Stack, which property consisted of stocks and bonds of the then value of approximately $200,000, represents the property subject to the within action.

Although in part they may be regarded as conclusions of law, nevertheless the court found, as facts, that at the time of the execution of the last will and testament of the decedent, and the waiver, election to take and consent of Mary A. Stack, "it was the intent of the parties to terminate any and all joint tenancies *then existing* between the respective parties" (italics added); that on the 8th day of June, 1932, they terminated the joint tenancy *theretofore* existing between them as to all property purchased with funds derived from their joint bank accounts prior to that date, and converted the same into community property; that the stocks and bonds in the safe deposit box which had been purchased with funds drawn from their bank accounts *subsequent* to June 8, 1932, were owned by them as joint tenants prior to the death of Mr. Stack, and upon his death became the property of Mrs. Stack; and that the balance belonged to the estate.

It is defendant widow's contention that none of the securities found in the safe deposit box at the time of the death of her husband belonged to his estate. In part, such

contention is based on the terms of the rental contract with the bank for the use of the safe deposit box, executed September 25, 1936, the pertinent part of which is as follows:

"Upon the death of either of us, the survivor is and shall for every purpose be the sole renter of said box, with the exclusive right of access thereto and possession of the contents thereof."

Such contention may be disposed of briefly with the observation that by the terms of the rental agreement the survivor acquired merely access to the box and possession of the contents. The title to the contents manifestly cannot be effected by such phraseology, under the circumstances here presented.

■ Although the complaint in the action was simple in form and the answer a general denial, defendant submits the issue on appeal "that her signature to this purported waiver was obtained through fraud, undue influence and misrepresentation". In the light of the pleadings, the evidence and the findings, it is too late to raise such question on appeal. Assuming, however, that the issue was raised by the evidence at the trial and that the trial court regarded such issue seriously, it is sufficient to note that the finding which, in substance, recites that defendant widow executed the waiver, also in effect implies that her signature was not obtained through fraud, undue influence or misrepresentation.

■ Giving consideration now, but with more particularity, to the legal effect of the will, and the waiver and election to take, as well as to the contract covering the rental of the safe deposit box, it should be noted that the questions raised pertain to an agreement between husband and wife, by the terms of which the husband disposed of all of their property by will, pursuant to the agreement between them. The evidence of the agreement is the will executed by the husband and the waiver executed by the wife. In that connection the legal status of the securities purchased with funds from the joint bank account necessarily must be taken into account.

The will declares: "that all of the property in which at the date hereof I have any interest, or which at this date stands in my name or in the name of myself and my wife, is our community property". After making this proposition the testator then proceeds as follows: "it is my intention hereby

to dispose not only of my separate estate and my share of the community property, but of the *entire community estate* . . . ''. Then in the waiver and election to take attached to and made a part of the will and referred to in the will, the defendant states, '' . . . fully understanding said Will and that my husband thereby disposes not only of his separate property but also of our community property now owned *or hereafter to be acquired,* if any, including my half thereof, and being fully convinced of its reasonableness and the wisdom of its provisions, I hereby elect to accept and acquiesce in the provisions of said Will, waiving all claims to my share of any community property and any and all other claims that I may have *upon any of the property disposed of by said Will* . . . ''. In other words, the testator enters into an agreement and makes a statement of fact in which the defendant acquiesces, that all of the property standing in his name and her name, regardless of the manner of ownership, ''is our community property'', and that it is his intention to dispose of the ''entire community estate''. This statement acquiesced in and agreed to by the defendant, regardless of the manner of the prior ownership of property or in whose name or names it stood, constituted for the purposes of disposition under the will the community estate of the respective parties. To this statement the widow fully acquiesced and further affirmatively waived ''any and all other claims that I may have upon any of the property disposed of by said Will''. (All italics added.)

The conditions to which the waiver was subject have been fulfilled. The will was never revoked; the agreement was never terminated either by modification, rescission, performance or otherwise. The will was effective as of the date of death; the agreement was effective from the date of its execution. Upon the death of the testator, the agreement, a portion of which is referred to as the waiver and election to take, was as binding upon the defendant widow as the will was upon the executor.

From the foregoing the conclusion is inevitable that as a matter of law no joint tenancies existed in the property of the parties upon the death of the husband. Therefore the finding, and in particular the legal conclusion, as well as the judgment of the trial court, to the effect that defendant widow acquired any property rights as ''survivor'' party to

a joint estate, lack support in the record. In this regard defendant relies upon the authority of *Estate of Harris*, 169 Cal. 725 [147 Pac. 967]. The Harris case sustains the doctrine, which has been followed in later decisions, that personal property acquired with funds held in joint tenancy retains the same character in the absence of any agreement indicating a different intention. However, the agreement of the parties herein definitely disposes of the joint tenancy issue on a basis unaffected by the doctrine enunciated in the Harris case. It is noteworthy that none of the securities involved herein were issued in joint tenancy but were either in decedent's name or were bonds payable to bearer.

Construing as a whole the instruments here considered, with the view of determining the legal effect of each, and in that regard necessarily taking into account the circumstances surrounding their execution, it is clearly evident that the parties had but one object in mind, namely, the disposition of the "entire community estate" in a manner that in the judgment of each would best serve to protect, and by the same means, provide for the wants of the wife upon the death of the husband. The term "estate" is comprehensive, and as has been hitherto declared, "One of the most common uses in which the word 'estate' is used is to denote and describe in a most general manner the property composing the assets of a deceased," and, "During the lifetime of the husband, he is the owner and entitled to the possession of all the community property." (*Estate of Sayre*, 114 Cal. App. 649 [300 Pac. 833].) It is likewise evident as heretofore noted in effect that upon the death of the husband the property purchased with funds from the joint bank account, by agreement of the parties, became and was a part of the "entire community estate" referred to in the will, and hence "property disposed of by said will" as provided in the election and waiver. Any other construction would in effect extend legal sanction to the unwarranted repudiation of a valid contract, and would as well defeat the obvious intent of the testator.

For the foregoing reasons that portion of the judgment which decrees that Security-First National Bank of Los Angeles, as executor of the last will and testament of Bernard E. Stack, deceased, is the owner of and entitled to the possession of certain stocks, bonds and other securities described in said judgment, is affirmed. That portion of the judg-

ment which decrees that Mary A. Stack is the owner of and entitled to the possession of certain stocks, bonds and securities described in said judgment, is reversed with directions to enter judgment therefor, and with respect thereto, in favor of plaintiff as prayed.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 31, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1939.