MILDRED IRENE SIEGEL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52700. Filed June 29, 1956.

*Dana Latham, Esq.*, and *Grover R. Heyler, Esq.*, for the petitioner. *John J. Burke, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* Respondent's position is that petitioner's January 5, 1950, election to take under Irving's will, in lieu of asserting her community property rights in the estate acquired during coverture, resulted in her making a gift to her son of a remainder interest in her one-half interest in community property which she thus transferred to a testamentary trust established under the last will and testament of Irving.[2] Respondent has stipulated that the net value of petitioner's community share at the date of gift was no greater than $584,035.44 (as opposed to the value of $625,600 determined in the deficiency notice). When $584,035.44 is multiplied by the factor .46002, pursuant to Regulations 108, section 86.19 (*g*), table A, column 3 (reversion after life estate in 48-year old person), a figure of $268,667.98 (instead of the $287,788.51 in the deficiency notice) is arrived at for the value of the remainder. Respondent now maintains that petitioner

---

[2] Internal Revenue Code of 1939.

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

made a taxable gift in 1950 in the amount of that $268,667.98, instead of $287,788.51 as determined in the deficiency notice.

Petitioner, on the other hand, argues that she made no gift because the transaction was without donative intent and was solely motivated by consideration of her own economic advantage and that, in any event, she received "adequate and full consideration in money or money's worth" for the remainder interest which, as a result of her election, was transferred to Irving's trust for her son's benefit.

We have recently enunciated the basic principles applicable to situations of this type in *Chase National Bank*, 25 T. C. 617. It is clear from a reading of that case that petitioner must be considered as having made a gift to the extent that the value of the interest she surrendered in her share of the community property exceeded the value of the interest she thereby acquired under the terms of Irving's will. If petitioner received more than she surrendered then, of course, no gift has been made. Our task, therefore, is to determine the value of what she received for what she gave up. In the *Chase National Bank* case, *supra*, we laid down the rule for measuring the value of the gift of the remainder interest in the testamentary trust there involved, as follows:

We therefore hold that Marie's acquiescence in this trust constituted a taxable gift to the extent of her community one-half of the principal less the life estate reserved by her therein, reduced by the value of the life estate received by her in the other one-half of the trust as consideration.

The same rule should be applied here in a computation under Rule 50, except that in the instant case petitioner received an outright bequest of $35,000 under decedent's will. That $35,000 should be added as a portion of what petitioner received for what she gave up.

In fixing the valuation of decedent's one-half interest in the community property which went into the testamentary trust and in fixing the value of petitioner's one-half interest in the community property which went into the testamentary trust, the parties have entered into an extensive stipulation concerning these matters. Only one item in the matter of valuation remains to be decided. This question is whether the petitioner's legacy under the will in the amount of $35,000 should be considered as a bequest of decedent's one-half of the community property and, accordingly, not subtracted from the value of petitioner's community interest, as the respondent contends, or whether it should be considered as applied in toto against the petitioner's share of the community property and thus reduce by $35,000 the value of what the petitioner contributed to the trust, as the petitioner contends.

We have decided this difference between the parties in accordance with respondent's contention. Accordingly, in our Findings of Fact

we have reduced decedent's share of the community property which otherwise would have gone into the testamentary trust by this $35,000. It seems clear to us from this provision in decedent's will that he realized that if Mildred took under the will she would not receive any lump-sum payment in cash and it was his desire that this $35,000 should be paid to her in order that she could give a like amount to her relatives, as he was bequeathing to his relatives, or, if she preferred, she could use the $35,000 in any manner that she desired. So it seems to us that when all the provisions of the will are considered it is reasonable to conclude that decedent intended that this $35,000 should be paid out of his share of the community property and we have so treated it in our Findings of Fact. However, it also seems equally clear that this $35,000 became a part of what petitioner received for what she gave up when she elected to take under decedent's will. To add this $35,000 to what petitioner received does no violence to the rule used in *Chase National Bank, supra,* in valuing the amount of the gift. It simply adds another factor, which was not present in that case, to be used in determining the value of the gift.

There is another issue which petitioner raises which we think we must discuss and that is the effect of that provision in decedent's will which reads as follows:

SEVEN: * * *

(a) To pay to my beloved wife, Mildred Irene Siegel, for the support, maintenance and care of herself and our beloved son, Richard Bruce Siegel, such sum as in the sole discretion of the majority of said trustees they deem proper to maintain at least the same standard of living to which she has been accustomed in recent years, but in no event less than the sum of One Thousand ($1,000.00) Dollars per month;

Petitioner in effect argues that this provision in the will was tantamount to giving petitioner an annuity at least large enough to maintain the standard of living which she enjoyed in the recent years prior to decedent's death, which she contends was not less than $46,000 annually, and that this right should be valued as was done in *Estate of Sarah A. Bergan,* 1 T. C. 543, and that when this is done, the rights which petitioner received under the terms of the testamentary trust are considerably in excess of the remainder interest in her share of the community property which went to her son under the terms of the trust. Hence petitioner contends there was no gift because she received considerably more than she gave up.

We are not persuaded by this argument. True, in our Findings of Fact we have a finding based on the evidence which says:

Under the economic conditions existing during the years subsequent to decedent's death and prior to this hearing it would cost petitioner $45,000 per year, including income taxes, to maintain the standard of living to which she was accustomed in recent years prior to decedent's death.

But we do not think this finding helps petitioner. Under the terms of paragraph Seven of the will, what was to be paid to petitioner was "such sum as in the *sole discretion* of the majority of said trustees they deem proper to maintain at least the same standard of living to which she has been accustomed in recent years, but in no event less than the sum of One Thousand ($1,000.00) Dollars per month," (emphasis supplied). We do not think it would be possible to construe this provision in the will as spelling out an annuity such as petitioner claims. The large income of the trust seems to us to make very improbable the invasion of principal in order to provide the minimum payments of $1,000 a month. Hence, it seems to us that we would not be justified in adding the value of the right of petitioner to have the principal invaded as one of the things which she received for what she gave up.

In *Chase National Bank, supra,* in the testamentary trust there involved, the trustee was given a broad discretionary power to distribute principal to any beneficiary. It was requested to exercise such discretion liberally but its decision was made final and conclusive. In that case we said:

In determining the value of the gift made by Marie in respect of the Testamentary Trust we have not ignored the provision conferring upon the trustee the discretionary power to distribute principal. This power is one which the trustee has the right to use or not to use, as it wishes, but it does not represent anything given to or received by Marie that is capable of valuation. * * * The amount of the taxable gift may not be reduced by reason of a possibility, over which Marie had no control and which is incapable of valuation, that the corpus or a part of it might be paid over to her. Cf. *Robinette* v. *Helvering,* 318 U. S. 184, 188–189.

We think we must so hold in the instant case. While there is some difference in the power of the trustees in the instant case to invade the corpus for purpose of making payments to petitioner from the power which was given the trustee to invade the corpus in *Chase National Bank, supra,* we think we would be unable to spell out a valid distinction between the two cases. We hold against petitioner on this issue.

*Decision will be entered under Rule 50.*