ESTATE OF EMMA BRESSANI, DECEASED, BARBARA JANE HANSEN, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4128–63. Filed January 19, 1966.

John T. Sweeney and E. James McGuire, for the petitioner.
Eugene H. Ciranni and Sheldon M. Sisson, for the respondent.

FAY, *Judge:* The Commissioner has determined a deficiency in estate tax of $60,512.11. The only issue for decision is whether decedent had, at the date of her death, a community property interest in a piece of property known as the Stevens Creek property.

## FINDINGS OF FACT

Some of the facts have been stipulated, are so found, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Emma Bressani (hereinafter sometimes referred to as decedent) died intestate on June 15, 1959. Decedent was a resident of California at the time of her death. Decedent's daughter, Barbara Jane Hansen (hereinafter sometimes referred to as Barbara), is the duly appointed administratrix of decedent's estate. The estate tax return of decedent was filed with the district director of internal revenue at San Francisco, Calif.

Decedent married Richard Bressani (hereinafter sometimes referred to as Richard) on October 30, 1921. They lived together in San Jose, Calif., during their entire married life. All of the property owned by Richard and decedent was community property as of the date of death of Richard and neither Richard nor decedent owned separate property on that date. Barbara is the only child of Richard and decedent.

Gerald B. Hansen is the husband of Barbara. He is an attorney and is also the U.S. Commissioner at San Jose. He practiced law in association with his father-in-law, Richard, for a number of years.

Decedent was unconcerned with family financial affairs and she left such matters to her husband, Richard, or to her daughter, Barbara.

On September 1, 1957, Richard executed his will. The pertinent provisions of said will are as follows:

SECOND: I declare that I am a married man and that the name of my wife is EMMA BRESSANI, and that I have but one child, BARBARA JANE HANSEN, a daughter, the issue of said marriage.

THIRD: I intend by this Will to dispose of not only my own separate property, if any, and my share of the community property of myself and my wife, over which I have the power of testamentary disposition, but also I intend to dispose of that share of the community property in which my wife has an interest or over which she has the power of testamentary disposition.

FOURTH: I give, bequeath, and devise all such property, real, personal or mixed and wheresoever situated, as follows, to wit:

A. To my wife, all household furniture and furnishings, and other personal effects together with the family automobile.

B. To BARBARA JANE HANSEN, in trust however and upon the following uses, for the benefit of my wife, EMMA BRESSANI, for the term of her natural life, the following property;

(1) Our family residence at 1191 Emory Street, San Jose, California.

(2) The proceeds of any and all life insurance upon my life.

(3) All of the rest, residue and remainder of such estate, except as is otherwise disposed of by this Will's bequests or devises.

    *       *       *       *       *       *       *

C. To my daughter, BARBARA JANE HANSEN, in her own right and not subject to any trust, I give, bequeath and devise those certain parcels of real

property which I own in the block bounded by Stevens Creek Road on the north, Clover Street on the east and Baywood on the west, in the City of San Jose.

Simultaneously with the execution of Richard's will, decedent, on September 1, 1957, executed the following document which was attached to said will:

### CONSENT BY WIFE TO WILL

I, EMMA BRESSANI, wife of RICHARD V. BRESSANI, also known as RICHARD VALENTINE BRESSANI, the maker of the foregoing Will, having read it in its entirety, and clearly understanding that my said husband by his said Will disposes not only of all of his separate estate, in case there be any such, but also all of our community property, including the share thereof which I would be entitled to take and receive by law upon his death, as well as his own share or interest therein, and being fully convinced in my own mind of the reasonableness and equity of said Will and the wisdom of its provisions, and in consideration of the provisions made for me therein, hereby elect to and do accept, acquiesce in and consent to said Will and all of its provisions, including disposition at the death of my said husband and [sic] all of our community property. I hereby accept such of the said provisions of said Will as apply to or concern me.

IN WITNESS WHEREOF, I have hereunto set my hand this 1st day of September, 1957.

(Signed) EMMA BRESSANI

WITNESSES:
(Signed) EUGENE NICORA
Residing at San Jose, Calif.
(Signed) MATILDA B. NICORA
Residing at San Jose, Calif.

Both the will of Richard and the written document of decedent were witnessed by a sister and brother of decedent.

The will of Richard and the "Consent by Wife to Will," executed simultaneously as aforesaid, and prior to his death, were effected pursuant to a proposed testamentary plan that had been discussed in detail by the decedent and her husband in the presence of a sister and brother of decedent for many months prior to the actual execution of the will and consent. Richard made a full disclosure of the community assets to his wife and to her relatives, the Nicoras, prior to the execution of the will and consent.

The will and consent were drafted by Richard's son-in-law, Gerald Hansen, attorney at law, who explained the provisions in detail to decedent, and the effect of her waiver and consent, prior to execution.

Richard, who had been ailing for some years, was concerned about the proper care of his wife in the event of his death, particularly in view of her inexperience and lack of interest in business affairs and financial management; and, therefore, in his will he set up a testamentary trust with substantial liquid assets as the corpus thereof for the maintenance of his wife after his death. Their daughter, who

was close to her mother, well educated, and experienced in business matters, was named trustee.

Under the provisions of the will of Richard, the unimproved realty on Stevens Creek Road, San Jose, was devised outright to Barbara, daughter of Richard and decedent. By executing the consent attached to Richard's will, it was the intent of the decedent to make a gift of her one-half interest in this property to their daughter effective upon her husband's death.

The Stevens Creek property was obtained by Richard and decedent in four separate transactions in 1953 and 1955 for a total purchase price of $102,000. The property was worth about $150,000 in 1957 and by May 12, 1959, the date of death of Richard, the property was worth $298,200.

Richard died on May 12, 1959, and decedent died on June 15, 1959. Neither the will nor decedent's consent to be bound by the will had been revoked or altered in any way prior to Richard's death. The will of Richard was filed and admitted to probate in the Superior Court in and for the County of Santa Clara, State of California, and the attached consent of decedent was filed and admitted in the aforesaid probate proceeding along with said will.

Barbara petitioned to be appointed executrix of her father's estate on May 29, 1959, and, aside from the filing of that petition, no other action was taken with respect to the probate of the estate of Richard prior to the death on June 15, 1959, of decedent. Barbara was not actually appointed executrix of her father's will until June 19, 1959, 4 days after her mother's death. Although the will of Richard was admitted to probate on June 19, 1959, final distribution of his estate did not occur until nearly 5 years later, on March 18, 1964.

An estate tax return for the estate of Richard was filed on July 15, 1960.

On July 15, 1960, a gift tax return was filed on behalf of decedent reflecting the gift to Barbara, as of the date of Richard's death, of decedent's one-half interest in the Stevens Creek property, San Jose, and of the remainder interest of decedent's one-half interest in the community property passing to the trust established by Richard's will. The gift tax return reflected total gifts of $241,665.26 representing the interest decedent had given up via her "consent." The gift tax return also showed that the value of what decedent was to receive via Richard's will was $43,782.36. Thus the gift tax return reflected net gifts of $197,882.90.

An estate tax return for the estate of decedent was filed and reflected only her one-half community interest in the aforesaid assets passing to the aforesaid trust, since the decedent had retained a life interest in said assets. The return, of course, did not include the Stevens Creek property.

The Federal gift tax, in the amount of $29,898.65, due on the aforesaid inter vivos transfers by decedent was an unpaid debt of decedent at the time of her death and was claimed as a deduction, item 2 of Schedule K, on the Federal estate tax return filed by petitioner.

A gift tax credit in the sum of $8,832.77 was claimed by petitioner.

Respondent, in his statutory notice, determined that an inter vivos gift of decedent's community property interest in the Stevens Creek property did not take place. Accordingly, respondent included her interest, to the extent of the fair market value of the property, in her gross estate. Respondent further denied the estate a deduction in the amount of the gift tax claimed to be owed by the estate and further denied the estate a gift tax credit.

OPINION

Petitioner argues that the fair market value as of the date of decedent's death of decedent's community property interests in the Stevens Creek property is not includable in the gross estate since there was an effective gift by decedent of this interest as of the date of her husband's death. Petitioner further maintains that the gift tax owed on this transfer was a debt of her estate and that the gift tax paid is a proper credit to be applied against the estate tax.

Respondent, on the other hand, maintains that the "consent" executed by decedent simultaneously with the execution of Richard's will did not effectively transfer her interest in the Stevens Creek property. Respondent argues that decedent was not bound by her "consent" but could have elected, after her husband's death, to take her community property interest and not abide by the terms of the will. Respondent further contends that even if decedent were bound by her "consent" to transfer the property to her daughter per the terms of her husband's will, she must affirmatively do so to complete the transfer and not having done so prior to her death there was not a completed gift at the date of Richard's death. Accordingly, respondent maintains that the fair market value of the Stevens Creek property is includable in decedent's gross estate to the extent of her community interest.[1]

We agree with petitioner.

Whether or not decedent, at the date of her death, owned a community property interest in the Stevens Creek property which would be includable in her gross estate depends upon the community property law of California. *Commissioner* v. *Siegel*, 250 F. 2d 339, 343 (C.A. 9, 1957), affirming 26 T.C. 743 (1956). Ever since 1927 the interests of husband and wife in community property in California are declared to be "present, existing and equal interests." Cal. Civ. Code, sec. 161a.

---

[1] Respondent has agreed that the case does not present an issue of gift in contemplation of death. Respondent further agrees that the execution of the "consent" by decedent was not brought on by undue influence, fraud, duress, or mistake.

It is clear under California law that a husband and wife can alter their legal relations as to the community property. Cal. Civ. Code, sec. 159. In the absence of any agreement between the parties, a husband can only effectively dispose of his one-half interest in the community property. Cal. Prob. Code, sec. 201. However, where a husband by clear and unequivocal language contained in his will attempts to dispose of not only his interest in community property but his wife's interest also, the wife is put to an election to take under the will or take her community property interest. *Commissioner* v. *Siegel, supra.*

In this case, Richard, by clear and unequivocal language contained in the third paragraph of his will, stated that he intended to dispose of not only his interest in the community property but his wife's interest as well. Decedent was thus put to an election which she could have waited to make at any time prior to the time that Richard's estate was ready to make distribution. *Commissioner* v. *Siegel, supra.* However, in this case decedent did not choose to wait, instead she executed simultaneously with the execution of Richard's will a document entitled "Consent by Wife to Will," set forth in full in our Findings of Fact. The legal effect of this type of document has been dealt with by the California courts in numerous cases. Whether you adopt the contract approach or the estoppel approach, the conclusions are the same—the effect of the wife's "consent" is that she is bound by the terms of the will to the extent that she had given up her right to her community property interest and has elected to take what has been provided for her via the will. *In Re Wyss' Estate*, 297 P. 100 (1931) ; *In Re Chapin's Estate*, 118 P. 2d 499, 502 (1941) ; *Flanagan* v. *Capital Nat. Bank of Sacramento*, 3 P. 2d 307, 308 (1931) ; *Security-First Nat. Bank of Los Angeles* v. *Stack*, 32 Cal. App. 2d 586, 90 P. 2d 337 (1939). Decedent, once she executed her consent to be bound by Richard's will, was not in a position to revoke her election. She was bound by her election and at the date of Richard's death she no longer possessed a right of election. *In Re Wyss' Estate, supra; In Re Chapin's Estate, supra; Flanagan* v. *Capital Nat. Bank of Sacramento, supra;* and *Security-First Nat. Bank of Los Angeles* v. *Stack, supra.*

Respondent argues that the document decedent executed was only entitled a "consent" and was not a consent and election. We agree that the label of the document was such that it would appear to be only a consent, but a reading of the document itself makes it clear that decedent was making an election also to be bound by the will and waiving her right to take her community property share. We do not believe that respondent would have us accept a mere heading of a document as controlling and ignore the contents of said document. A comparison of the document in this case with the ones executed in *In Re Wyss' Estate, supra,* and the other California cases cited above,

clearly indicates that decedent elected to be bound by the will and waived any other choice she might have had. Accordingly, we hold that decedent having executed a "consent" simultaneously with the execution of Richard's will was irrevocably bound by this consent.

We next approach the question as to what was the effect of decedent's election. The effect of the wife's election is that, as of the date of Richard's death, she had made a gift to the extent that the value of the interest she surrendered in her share of the community property exceeded the value of the interest she thereby acquired under the terms of Richard's will. *Pacific National Bank of Seattle, Executor,* 40 B.T.A. 128, 135 (1939) ; *Chase National Bank,* 25 T.C. 617 (1955), reversed on other grounds 259 F. 2d 231 (C.A. 5, 1958), certiorari denied 359 U.S. 913 (1959) ; *Mildred Irene Siegel,* 26 T.C. 743, 747 (1956), affd. 250 F. 2d 339 (C.A. 9, 1957) ; *Zillah Mae Turman,* 35 T.C. 1123, 1129 (1961). In this case the particular property involved, the Stevens Creek property, was under the terms of Richard's will devised outright to decedent's daughter. Since the effect of the decedent's election was to have her interest in the community property pass to the daughter as a gift on the date of Richard's death, it follows that as of the date of decedent's death she no longer had any interest in that property which could be included in her gross estate. Furthermore, since the value of what decedent gave up was in excess of what she received, the excess was properly subject to a gift tax allowing decedent's estate a deduction for the gift tax liability as well as a credit for the gift tax.

Respondent argues that if we accept that decedent's "consent" is binding and has the effect of a waiver, it would be set aside under California law because decedent is giving up much more that she will receive. Respondent relies on *Gaines* v. *California Trust Co.,* 121 P.2d 28 (1942), where a waiver was set aside because the court did not find any adequate consideration for the waiver. However, we do not feel that *Gaines* v. *California Trust Co., supra,* requires a different result from that reached herein. First, respondent has conceded that the signing of the "consent" by decedent was not brought on by duress, undue influence, fraud, or mistake. Furthermore, the evidence of record reveals that decedent was well aware of what she was doing and was aided by her son-in-law, who was an attorney. She also was given full disclosure by Richard, prior to the execution of the "consent" as to the extent of their estate and the value of their estate. Under these facts and in view of the fact that decedent did receive some consideration for her waiver, we think the case of *Opp* v. *Frye,* 161 P.2d 235 (1945), which distinguishes *Gaines* v. *California Trust Co., supra,* for the reasons just stated, is more in point.

*Decision will be entered for the petitioner.*